## PHILIP CONLIN

*v.*

## HORACE CARTER.

1. CHANCERY PRACTICE—*reference to master.* Where an account is to be stated, the proper practice is to refer the cause to a master to state the same, so that the parties may be heard before final decree, upon exceptions. But where the parties have themselves adjusted the account, in the absence of proof of mistake or fraud there is no error in dismissing a bill seeking to open the settlement, without any reference to the master to state the account.

2. SETTLEMENT—*opening in equity.* Where parties in 1872 adjusted their accounts, and the debtor gave his notes and mortgage to secure the balance found to be due from him, and afterwards, in 1875, when he wanted an extension of the time of payment, the matter was again passed upon, and the first securities canceled and new notes and a new mortgage given, it was held that these two settlements could not be disturbed without clear proof of fraud or mistake.

3. PLEADING AND EVIDENCE—*enjoining sale for cause not named in bill.* A sale under a power in a mortgage will not be enjoined for defects in the notice of sale, where such defects are not set up and relied on in the bill. It is not enough to give a copy of the notice alleged to have been given, where it is not charged that it was the only notice given.

4. SAME—*sufficiency of bill to enjoin.* If a complainant seeks to enjoin a sale entirely under a power in a mortgage, he can not object that the court should have confirmed the sale for the amount of the note then due. If the mortgagor wishes to present the question whether a sale can be made for the whole amount secured, he should do so in his pleadings, and not seek to enjoin the sale entirely.

APPEAL from the City Court of LaSalle; the Hon. GEO. H. LOCEY, Judge, presiding.

Mr. R. D. McDONALD, and Mr. DANIEL EVANS, for the appellant.

Messrs. DUNCAN & O'CONNER, for the appellee.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

This is a bill to enjoin the sale of certain real estate under a mortgage with power of sale, and to ascertain the amount of the real indebtedness, which is charged to have been less than the amount mentioned in the notes for the security of which the mortgage was given.

Issues were made, and on final hearing the bill was dismissed, and complainant appeals.

It appears, from the pleadings and proofs, that Carter was a merchant in Chicago, dealing in lumber; that for several years prior to 1872, Conlin, who was dealing in lumber at LaSalle, had been buying from Carter lumber from time to time, and had from time to time made payments and remittances of money to Carter; that after this course of dealing had ceased, and some time in October, 1872, Carter visited Conlin, at LaSalle, with a statement of what he claimed to be a balance due him upon an adjustment of all their past dealings, amounting to more than $10,000. This was submitted to Conlin; and Conlin, at Carter's request, secured the amount by note, and mortgage on certain real estate, to be paid at a future day, with interest at the rate of ten per cent per annum. Thus the matter rested until some time in 1875, Conlin having made some payments in the meantime.

About the 1st of July, 1875, Conlin having neglected to pay the taxes on the real estate, and having failed to make payments to the extent he had undertaken, the parties had another meeting at LaSalle. At that meeting there were computations of interest and of payments made after giving the mortgage of 1872, and in lieu of the notes and mortgage of 1872 Conlin gave new notes and a new mortgage, in all amounting to about $10,225, providing for the payment of

that sum in ten annual payments. Each of these payments was to be $1000, except one which was to fall due ·July 1st, 1881, and that instalment was fixed at $1225. · For each of these instalments Conlin gave his note to Carter, to bear interest at the rate of ten ‾per cent per annum, payable annually; and to secure‾ the payment of these notes gave the mortgage in question.

On the hearing, proofs were heard tending to prove, as appellant insists, that Conlin was not indebted to Carter in so large an amount as was included in this mortgage.

Appellant insists that the court erred in proceeding to a final decree without a reference to a master to state the account between the parties. Counsel quote authorities showing that where an account is to be stated, that work should be imposed upon the master, and parties should thus have a hearing before final decree, upon questions to be raised by exceptions to the report of the master. This is undoubtedly the proper practice where the statement of an account is to be made. In this case there was a preliminary question to be determined. The court held, and we think properly held, that complainant was not entitled to have the accounts opened for investigation. The parties themselves had adjusted these accounts and agreed upon the balance in 1872, and notes and mortgage were given for the amount. Again, in 1875, when appellant wanted an extension of the time of payment, the matter was again passed upon, and the first securities were canceled and new notes and a new mortgage given, in which was included the unpaid principal and interest, and also the sum of $500, to indemnify the creditor in ridding the property in mortgage from certain incumbrances and liens, arising from the failure of the debtor to pay the taxes on the property. It is not until 1876 that any complaint is heard from appellant as to the justice of the amount included in these mortgages. These two settlements ought not to be disturbed without clear proof of fraud or mistake. Complainant alleges that subsequent to these settlements he ascertained that certain payments which

he made prior to 1872 were not credited to him in adjusting the amount; and insists that in making up the amount of the settlement in 1872, interest was computed upon over due accounts without his knowledge. Complainant discloses no source of information on these subjects which was not accessible to him 1872. Appellee testifies that all proper credits were allowed, and that for the interest charged he had the express agreement of appellant that he would pay such interest. Appellant testifies that he made no such agreement, but in his original bill, before it was amended, he charged that this interest was usurious, and that it was paid in pursuance of an express agreement. The weight of the evidence on this question is certainly with appellee. As to the payments which appellant says were not credited, he simply testifies that he made certain payments and entered them on his own books, which payments he does not find credited in the statement of account furnished by appellee in 1872, and on which the first settlement was made. He also testifies that appellee's statement contains credits which are not on appellant's books, which he says contain entries of all the moneys he ever paid appellee. He does not produce these books, nor a full statement of his credits therein. For aught that appears, the credits on appellant's statement may be as great or greater than those in appellee's account.

It is enough to say that the record fails to show sufficient ground to require the adjustment of the parties to be opened. Appellant was not, under the proofs, entitled to any accounting.

It is insisted that the sale in question should have been prohibited on account of defects in the notice. There is no allegation in the bill that sufficient notice had not been given. True the bill gives a copy of a notice alleged to have been given, but it does not charge that this was the only notice. The answer admits that notice of the sale had been given in pursuance of the power in the mortgage, but does not admit that the notice mentioned in the bill was the only notice.

Another point raised is that Carter had no authority, under

his mortgage, to sell the property for the whole amount of the notes and interest. While in the bill complainant alleges that Carter could not lawfully sell for the whole amount of the mortgage, and in the answer it is insisted that he had such power, there is no allegation in the bill, or admission in the answer, or statement in the proofs, showing for what amount the sale was to be made. The bill does not ask merely for an injunction forbidding the sale of any more property than enough to satisfy the first note. The objective point was to stop the sale entirely. If complainant intended to rest his case on this question it should have been distinctly presented in the pleadings.

Finding no sufficient ground to disturb the decree of the court below the same must be affirmed.

*Decree affirmed.*

Mr. Justice Scott, dissenting:

I do not believe, from the evidence, that the notes represent the true amount due from Conlin to Carter; and under the rule declared in *Moss* v. *M'Call*, 75 Ill. 190, the case ought to have been referred to the master, to take and state the accounts between the parties.